# EXHIBIT 7

**From:** Rob Russell <Rob.Russell@greyco.com>
**Sent:** Monday, October 20, 2025 3:04 PM
**To:** Orit Teichner
**Cc:** Greg Lyss
**Subject:** Fwd: Revised.
**Attachments:** CW Capital NDA CW redline 102025.docx; CW Capital NDA CW clean 102025.docx

Sent from my iPhone

Begin forwarded message:

**From:** Alex Killick <akillick@cwcapital.com>
**Date:** October 20, 2025 at 2:52:09 PM EDT
**To:** Rob Russell <Rob.Russell@greyco.com>
**Cc:** David Iannarone <diannarone@cwcapital.com>, Keli Mazzuca <Kmazzuca@cwcapital.com>
**Subject: Re: Revised.**

Rob,

Following our discussions over the weekend, please see attached clean and redline. This should get us there: keeps your non-solicit language but carves out special servicing employees. Feel free to adjust the language to match how you have the staff structured, as we were not sure whether the special servicing entity is distinct from the primary servicer, originators, etc. The objective is to give you what you need to get comfortable protecting your broader originations platform without signing us up for a non-solicit obligation as to the special servicing staff that we are not currently under and would not want to be under in a scenario where this transaction does not proceed.

On that topic, let me know if we can connect this afternoon. I want to understand more about the overall structure of the potential sale, asset sale vs entity sale etc.

Other cleanups (not material):

- Correcting the spelling of CW's name in the first paragraph and adding 'LLC'
- Minor (but made for clarity) corrections in the next two paragraphs (inserted a missing 's' for the Greystone possessive and put parentheses around the defined term for Greystone Group) .
- In CW's sig block, added LLC to our name and capped it to be consistent with Greystone's sig block
    - o

Alex Killick

CWCapital Asset Management

202-715-9549

akillick@cwcapital.com

---

**From:** Rob Russell <Rob.Russell@greyco.com>
**Sent:** Saturday, October 18, 2025 6:31 PM
**To:** Alex Killick <akillick@cwcapital.com>; David Iannarone <Diannarone@cwcapital.com>; Keli Mazzuca <Kmazzuca@cwcapital.com>
**Subject:** Revised.

Thanks for being so responsive. Here is a redraft that I will execute tonight. Thanks

Sent from my iPhone

* * * * * * * * * * *
NOTICE: This e-mail and any attachments contain confidential information that may be legally privileged. If you are not the intended recipient, you must not review, retransmit, print, copy, use or disseminate it. Please immediately notify us by return e-mail and delete it. If this e-mail contains a forwarded e-mail or is a reply to a prior email, the contents may not have been produced by the sender and therefore we are not responsible for its contents.

This notice is automatically appended to each e-mail. It is the recipient's responsibility to take measures to ensure that this e-mail is virus free, and no responsibility is accepted by Greystone for any loss or damage arising in any way from its use.
* * * * * * * * * * *

**CONFIDENTIALITY AGREEMENT**

This CONFIDENTIALITY AGREEMENT (this "Agreement") is made as of the 20th day of October, 2025 by and between CW ~~Finnacial~~Financial Services LLC (the "Recipient") whose address is 900 19th Street NW, 8th Floor, Washington, DC 20006 and Greystone Servicing Company LLC ("Greystone"), a Delaware limited liability company with offices at 152 W. 57th Street, 60th Floor, New York, New York 10019.

WHEREAS, Recipient is considering a possible transaction with Greystone and/or its affiliates involving ~~Greystone'~~Greystone's special servicing business (the "Proposed Transaction"); and

WHEREAS, Greystone and/or its affiliates (Greystone and its affiliates are individually and collectively, referred to as the "Greystone Group~~)~~") or its Representatives (as defined below) may provide information relating to (i) the Greystone Group (including, without limitation, information relating to the Greystone Group's employees, assets, programs, procedures, policies, guidelines, current and prospective business, special servicing, finances, prospects, prospective deals and acquisitions), (ii) one or more of the Greystone Group's former, current or prospective borrowers or clients (each a "Client") and/or Client's properties, loans, affiliates and prospective acquisitions, (iii) the Proposed Transaction and/or (iv) third parties; which is, in each case, proprietary, confidential, and/or not otherwise publicly available (such information whether furnished before or after the date of this Agreement and whether furnished in writing, orally electronically or otherwise, along with all discussions relating to the Proposed Transaction, the Greystone Group or any Client and all analysis, compilations, information, data, studies, or other documents based in whole or in part on or derived from such information is referred to herein as the "Confidential Information").

NOW, THEREFORE, the parties hereto, in exchange for the mutual promises, covenants and agreements herein, and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound, do hereby agree as follows:

1. Confidential Information. For purposes of this Agreement, Confidential Information shall not include information which (i) was already in Recipient's or its Representative's possession prior to disclosure by or on behalf of the Greystone Group or its Representatives, provided that such information is not, to Recipient's or its Representative's knowledge, subject to an obligation of confidentiality to the Greystone Group or another person, (ii) becomes generally available to the public other than as a result of improper disclosure by Recipient or its directors, officers, affiliates, employees, agents or advisors (collectively, its "Representatives"), (iii) becomes available to Recipient or its Representative on a non-confidential basis from a source other than the Greystone Group or its Representatives, provided that such source is not to Recipient's or its Representative's knowledge, bound by an obligation of confidentiality to the Greystone Group or another person, or (iv) Recipient can conclusively demonstrate was independently developed by Recipient or its Representatives without use of or reference to the Confidential Information. The term "person" as used in this Agreement shall be broadly interpreted to include, without limitation, any corporation, company, partnership, entity or individual.

2. Non-Disclosure and Limited Use of Information. Recipient agrees that the Confidential Information shall be treated as strictly confidential and will be used by it and its Representatives solely for the purpose of its evaluation of the Proposed Transaction. Neither Recipient nor its Representatives will disclose any Confidential Information to any person, except to those of Recipient's Representatives as necessary for the Recipient to evaluate the Proposed Transaction.

3. Return or Destruction of Confidential Information. If Recipient determines not to pursue the Proposed Transaction, and at any time upon Greystone's request, Recipient shall promptly collect from all of its Representatives and return to Greystone, all Confidential Information and any other material in whatever form containing or reflecting any Confidential Information, or destroy such materials, without retaining any copies, in whole or in part, of such material. Recipient shall, promptly following Greystone's written request, provide a written certification by an authorized officer of Recipient of the destruction of the materials. Recipient may retain such copies required by law or its legal retention policies and such electronic copies that cannot be destroyed, provided the restrictions on the use and disclosure of such information contained in this Agreement are complied with.

4. Notice to Representatives. Recipient shall notify its Representatives who have access to the Confidential Information of this Agreement and shall require its Representatives to abide by all provisions of this Agreement. Recipient agrees, at its sole expense, to take all reasonable measures to restrain its Representatives from disclosing, using or otherwise dealing with, any of the Confidential Information in a manner which is inconsistent with, or prohibited by, this Agreement. Recipient agrees that it shall be responsible for any breach of this Agreement by its Representatives.

5. No Representations Relating to the Confidential Information. Recipient acknowledges that neither the Greystone Group nor any of the Greystone Group's Representatives makes any representation or warranty regarding the information provided to Recipient. Recipient and its Representatives hereby release the Greystone Group and their Representatives from any and all liability resulting from Recipient's or its Representative's use of the Confidential Information or reliance thereon.

6. Nondisclosure of Discussions. Recipient agrees that (except as permitted pursuant to Section 7 below) without Greystone's prior written consent, Recipient and its Representatives shall not disclose to any other person nor confirm: (i) the fact that the Greystone Group is considering the Proposed Transaction, (ii) that Confidential Information has been made available to it, or (iii) that discussions or negotiations are taking place with the Greystone Group or any of the terms, conditions or other facts with respect to the Proposed Transaction, including the status thereof. Recipient agrees that all communications or requests for communications with any person or persons regarding the Proposed Transaction will be directed to Greg Lyss, Robert Russell or their designee and the Recipient, and its Representatives shall not contact any other employee of the Greystone Group in connection with the Proposed Transaction

**Style Definition:** Heading 1

**Style Definition:** Body Text

**Style Definition:** List Paragraph

**Formatted:** Condensed by 0.2 pt

**Formatted:** Condensed by 0.35 pt

**Formatted:** Justified, Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.5" + Indent at: 1"

**Formatted:** Condensed by 0.1 pt

**Formatted:** Justified, Indent: Left: 0", First line: 0.5", Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.5" + Indent at: 1"

**Formatted:** Condensed by 0.25 pt

**Formatted:** Condensed by 0.6 pt

**Formatted:** Condensed by 0.6 pt

**Formatted:** Condensed by 0.4 pt

**Formatted:** Not Expanded by / Condensed by

**Formatted:** Condensed by 0.55 pt

**Formatted:** Condensed by 0.5 pt

7. Required Disclosures of Confidential Information. If Recipient or any of its Representatives are required by law, regulation or legal process to disclose any Confidential Information, Recipient shall provide Greystone with prompt written notice of any such requirement, to the extent not prohibited by law. If, in the absence of a protective order or other remedy or the receipt of a waiver by Greystone, Recipient or any of its Representatives are nonetheless, in the opinion of counsel, legally required to disclose Confidential Information, Recipient or its Representatives may, without liability hereunder, disclose only that portion of the Confidential Information which such counsel advises Recipient or the Representative is legally required to be disclosed. Recipient and its Representatives shall exercise reasonable efforts to cooperate with Greystone to preserve the confidentiality of any Confidential Information, including without limitation, any efforts to obtain an appropriate protective order (at Greystone's cost and expense) or reliable assurance that confidential treatment will be accorded the Confidential Information.

8. No Contract. The Greystone Group shall not have any legal obligation of any kind whatsoever with respect to the Proposed Transaction or any other transaction or potential transaction by virtue of this Agreement or any other written or oral expression with respect to such Proposed Transaction, except for such obligations as expressly set forth in a Definitive Agreement, if any, executed and delivered by Greystone. Until a Definitive Agreement is so executed and delivered, Recipient hereby waives, in advance, any claims (including, without limitation, breach of contract) in connection with the Proposed Transaction. The term "Definitive Agreement" shall mean a conclusive final written agreement containing customary and reasonable terms as may be applicable to the Proposed Transaction but does not include an executed letter of intent or any preliminary written agreement, nor does it include any written or verbal agreement in principle or acceptance of any offer or bid on the Greystone Group's part.

9. Non-Solicitation. Unless otherwise agreed to by Greystone Group, Recipient and Recipient's affiliates shall not for a period of six (6) months from the date hereof, solicit for hire (except via general advertisement to the public not specifically directed or targeted toward the Greystone Group's employees) or hire any Greystone Group employee to whom Recipient is introduced in the course of Recipient's evaluation or otherwise of the Proposed Transaction or any person who is identified through the Confidential Information to be employed by the Greystone Group, or otherwise encourage any such person to terminate employment with the Greystone Group; provided that this non-solicitation provision shall not apply to any of Greystone Group's special servicing personnel.

10. Non-Circumvent. If the Confidential Information includes information relating to one or more loans held, originated or serviced by the Greystone Group (each a "Loan"), Recipient and its Representative shall not, without Greystone's prior written consent, communicate with or contact, concerning the Loan or the property securing the Loan, any person that is an obligor, debtor or guarantor under the Loan, or a tenant, property manager or other person having rights or responsibilities with respect to the Loan or the aforesaid property.

11. Remedies. Recipient agrees that the Greystone Group shall be entitled to equitable relief, including injunction and specific performance, in the event of any breach or threatened breach of the provisions of this Agreement, in addition to all other remedies available at law or in equity. Recipient agrees further that no failure or delay by the Greystone Group in exercising any right, power or privilege hereunder will operate as a waiver thereof, nor will any single or partial exercise thereof preclude any other or further exercise or the exercise of any right, power or privilege hereunder. Should the Greystone Group institute litigation to enforce any provision hereof and prevail therein, the Greystone Group shall be entitled to recover all costs, including reasonable legal fees, from Recipient.

12. Governing Law and Jurisdiction. This Agreement is for the benefit of the Greystone Group and shall be governed by and construed in accordance with the laws of the State of New York without regard to conflicts of laws principles. Each of Recipient and Greystone hereby irrevocably and unconditionally consents to submit to the exclusive jurisdiction of the courts of the State of New York and of the United States of America located in the State of New York for any actions, suits or proceedings arising out of or relating to this Agreement and the transactions contemplated hereby.

13. Entire Agreement; Assignment; Execution in Counterparts. This Agreement constitutes the entire understanding between the parties and supersedes any and all prior or contemporaneous understandings and agreements, whether oral or written, between the parties, with respect to the subject matter hereof. This Agreement can only be modified by a written amendment signed by the parties. This Agreement may not be assigned or transferred by Recipient directly or indirectly without the prior written consent of Greystone (which may be given or withheld in its sole discretion). This Agreement may be signed in one or more counterparts, each of which shall be an original, but together shall be one and the same instrument. This Agreement may further be signed and transmitted by facsimile, pdf, or other electronic means, with such signature to be treated as an original and the document transmitted to be considered to have the same binding effect as an original signature on an original document.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first set forth above.

| | |
|---|---|
| **GREYSTONE SERVICING COMPANY LLC** | **CW ~~Financial Services~~FINANCIAL SERVICES LLC** |
| By:________________________________ | By:________________________________ |
| Name: Robert Russell | Name: ~~David Iannarone~~Alex Killick |
| Title: _Senior Managing Director | Title: ~~Chief Executive Officer~~ Senior Managing Director |

Formatted: Justified, Indent: Left: 0", First line: 0.5", Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.5" + Indent at: 1"
Formatted: Condensed by 0.45 pt
Formatted: Condensed by 0.45 pt
Formatted: Condensed by 0.25 pt
Formatted: Condensed by 0.4 pt
Formatted: Condensed by 0.25 pt
Formatted: Not Expanded by / Condensed by
Formatted: Not Expanded by / Condensed by
Formatted: Not Expanded by / Condensed by
Formatted: Not Expanded by / Condensed by
Formatted: Not Expanded by / Condensed by
Formatted: Not Expanded by / Condensed by
Formatted: Not Expanded by / Condensed by
Formatted: Not Expanded by / Condensed by
Formatted: Not Expanded by / Condensed by
Formatted: Not Expanded by / Condensed by
Formatted: Not Expanded by / Condensed by
Formatted: Not Expanded by / Condensed by
Formatted: Not Expanded by / Condensed by
Formatted: Not Expanded by / Condensed by
Formatted: Not Expanded by / Condensed by
Formatted: Not Expanded by / Condensed by
Formatted: Not Expanded by / Condensed by
Formatted: Condensed by 0.55 pt
Formatted: Condensed by 0.5 pt
Formatted: Condensed by 0.55 pt
Formatted: Condensed by 0.5 pt
Formatted: Condensed by 0.55 pt
Formatted: Condensed by 0.5 pt
Formatted: Condensed by 0.55 pt
Formatted: Condensed by 0.5 pt
Formatted: Condensed by 0.3 pt
Formatted: Condensed by 0.1 pt
Formatted: Condensed by 0.5 pt

**CONFIDENTIALITY AGREEMENT**

This CONFIDENTIALITY AGREEMENT (this "Agreement") is made as of the 20th day of October, 2025 by and between CW Financial Services LLC (the "Recipient") whose address is 900 19th Street NW, 8th Floor, Washington, DC 20006 and Greystone Servicing Company LLC ("Greystone"), a Delaware limited liability company with offices at 152 W. 57th Street, 60th Floor, New York, New York 10019.

WHEREAS, Recipient is considering a possible transaction with Greystone and/or its affiliates involving Greystone's special servicing business (the "Proposed Transaction"); and

WHEREAS, Greystone and/or its affiliates (Greystone and its affiliates are individually and collectively, referred to as the "Greystone Group") or its Representatives (as defined below) may provide information relating to (i) the Greystone Group (including, without limitation, information relating to the Greystone Group's employees, assets, programs, procedures, policies, guidelines, current and prospective business, special servicing, finances, prospects, prospective deals and acquisitions), (ii) one or more of the Greystone Group's former, current or prospective borrowers or clients (each a "Client") and/or Client's properties, loans, affiliates and prospective acquisitions, (iii) the Proposed Transaction and/or (iv) third parties; which is, in each case, proprietary, confidential, and/or not otherwise publicly available (such information whether furnished before or after the date of this Agreement and whether furnished in writing, orally electronically or otherwise, along with all discussions relating to the Proposed Transaction, the Greystone Group or any Client and all analysis, compilations, information, data, studies, or other documents based in whole or in part on or derived from such information is referred to herein as the "Confidential Information").

NOW, THEREFORE, the parties hereto, in exchange for the mutual promises, covenants and agreements herein, and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound, do hereby agree as follows:

1. Confidential Information. For purposes of this Agreement, Confidential Information shall not include information which (i) was already in Recipient's or its Representative's possession prior to disclosure by or on behalf of the Greystone Group or its Representatives, provided that such information is not, to Recipient's or its Representative's knowledge, subject to an obligation of confidentiality to the Greystone Group or another person, (ii) becomes generally available to the public other than as a result of improper disclosure by Recipient or its directors, officers, affiliates, employees, agents or advisors (collectively, its "Representatives"), (iii) becomes available to Recipient or its Representative on a non-confidential basis from a source other than the Greystone Group or its Representatives, provided that such source is not to Recipient's or its Representative's knowledge, bound by an obligation of confidentiality to the Greystone Group or another person, or (iv) Recipient can conclusively demonstrate was independently developed by Recipient or its Representatives without use of or reference to the Confidential Information. The term "person" as used in this Agreement shall be broadly interpreted to include, without limitation, any corporation, company, partnership, entity or individual.

2. Non-Disclosure and Limited Use of Information. Recipient agrees that the Confidential Information shall be treated as strictly confidential and will be used by it and its Representatives solely for the purpose of its evaluation of the Proposed Transaction. Neither Recipient nor its Representatives will disclose any Confidential Information to any person, except to those of Recipient's Representatives as necessary for the Recipient to evaluate the Proposed Transaction.

3. Return or Destruction of Confidential Information. If Recipient determines not to pursue the Proposed Transaction, and at any time upon Greystone's request, Recipient shall promptly collect from all of its Representatives and return to Greystone, all Confidential Information and any other material in whatever form containing or reflecting any Confidential Information, or destroy such materials, without retaining any copies, in whole or in part, of such material. Recipient shall, promptly following Greystone's written request, provide a written certification by an authorized officer of Recipient of the destruction of the materials. Recipient may retain such copies required by law or its legal retention policies and such electronic copies that cannot be destroyed, provided the restrictions on the use and disclosure of such information contained in this Agreement are complied with.

4. Notice to Representatives. Recipient shall notify its Representatives who have access to the Confidential Information of this Agreement and shall require its Representatives to abide by all provisions of this Agreement. Recipient agrees, at its sole expense, to take all reasonable measures to restrain its Representatives from disclosing, using or otherwise dealing with, any of the Confidential Information in a manner which is inconsistent with, or prohibited by, this Agreement. Recipient agrees that it shall be responsible for any breach of this Agreement by its Representatives.

5. No Representations Relating to the Confidential Information. Recipient acknowledges that neither the Greystone Group nor any of the Greystone Group's Representatives makes any representation or warranty regarding the information provided to Recipient. Recipient and its Representatives hereby release the Greystone Group and their Representatives from any and all liability resulting from Recipient's or its Representative's use of the Confidential Information or reliance thereon.

6. Nondisclosure of Discussions. Recipient agrees that (except as permitted pursuant to Section 7 below) without Greystone's prior written consent, Recipient and its Representatives shall not disclose to any other person nor confirm: (i) the fact that the Greystone Group is considering the Proposed Transaction, (ii) that Confidential Information has been made available to it, or (iii) that discussions or negotiations are taking place with the Greystone Group or any of the terms, conditions or other facts with respect to the Proposed Transaction, including the status thereof. Recipient agrees that all communications or requests for communications with any person or persons regarding the Proposed Transaction will be directed to Greg Lyss, Robert Russell or their designee and the Recipient, and its Representatives shall not contact any other employee of the Greystone Group in connection with the Proposed Transaction

7. Required Disclosures of Confidential Information. If Recipient or any of its Representatives are required by law, regulation or legal process to disclose any Confidential Information, Recipient shall provide Greystone with prompt written notice of any such requirement, to the extent not prohibited by law. If, in the absence of a protective order or other remedy or the receipt of a waiver by Greystone, Recipient or any of its Representatives are nonetheless, in the opinion of counsel, legally required to disclose Confidential Information, Recipient or its Representatives may, without liability hereunder, disclose only that portion of the Confidential Information which such counsel advises Recipient or the Representative is legally required to be disclosed. Recipient and its Representatives shall exercise reasonable efforts to cooperate with Greystone to preserve the confidentiality of any Confidential Information, including without limitation, any efforts to obtain an appropriate protective order (at Greystone's cost and expense) or reliable assurance that confidential treatment will be accorded the Confidential Information.

8. No Contract. The Greystone Group shall not have any legal obligation of any kind whatsoever with respect to the Proposed Transaction or any other transaction or potential transaction by virtue of this Agreement or any other written or oral expression with respect to such Proposed Transaction, except for such obligations as expressly set forth in a Definitive Agreement, if any, executed and delivered by Greystone. Until a Definitive Agreement is so executed and delivered, Recipient hereby waives, in advance, any claims (including, without limitation, breach of contract) in connection with the Proposed Transaction. The term "Definitive Agreement" shall mean a conclusive final written agreement containing customary and reasonable terms as may be applicable to the Proposed Transaction but does not include an executed letter of intent or any preliminary written agreement, nor does it include any written or verbal agreement in principle or acceptance of any offer or bid on the Greystone Group's part.

9. Non-Solicitation. Unless otherwise agreed to by Greystone Group, Recipient and Recipient's affiliates shall not for a period of six (6) months from the date hereof, solicit for hire (except via general advertisement to the public not specifically directed or targeted toward the Greystone Group's employees) or hire any Greystone Group employee to whom Recipient is introduced in the course of Recipient's evaluation or otherwise of the Proposed Transaction or any person who is identified through the Confidential Information to be employed by the Greystone Group, or otherwise encourage any such person to terminate employment with the Greystone Group; provided that this non-solicitation provision shall not apply to any of Greystone Group's special servicing personnel.

10. Non-Circumvent. If the Confidential Information includes information relating to one or more loans held, originated or serviced by the Greystone Group (each a "Loan"), Recipient and its Representative shall not, without Greystone's prior written consent, communicate with or contact, concerning the Loan or the property securing the Loan, any person that is an obligor, debtor or guarantor under the Loan, or a tenant, property manager or other person having rights or responsibilities with respect to the Loan or the aforesaid property.

11. Remedies. Recipient agrees that the Greystone Group shall be entitled to equitable relief, including injunction and specific performance, in the event of any breach or threatened breach of the provisions of this Agreement, in addition to all other remedies available at law or in equity. Recipient agrees further that no failure or delay by the Greystone Group in exercising any right, power or privilege hereunder will operate as a waiver thereof, nor will any single or partial exercise thereof preclude any other or further exercise or the exercise of any right, power or privilege hereunder. Should the Greystone Group institute litigation to enforce any provision hereof and prevail therein, the Greystone Group shall be entitled to recover all costs, including reasonable legal fees, from Recipient.

12. Governing Law and Jurisdiction. This Agreement is for the benefit of the Greystone Group and shall be governed by and construed in accordance with the laws of the State of New York without regard to conflicts of laws principles. Each of Recipient and Greystone hereby irrevocably and unconditionally consents to submit to the exclusive jurisdiction of the courts of the State of New York and of the United States of America located in the State of New York for any actions, suits or proceedings arising out of or relating to this Agreement and the transactions contemplated hereby.

13. Entire Agreement; Assignment; Execution in Counterparts. This Agreement constitutes the entire understanding between the parties and supersedes any and all prior or contemporaneous understandings and agreements, whether oral or written, between the parties, with respect to the subject matter hereof. This Agreement can only be modified by a written amendment signed by the parties. This Agreement may not be assigned or transferred by Recipient directly or indirectly without the prior written consent of Greystone (which may be given or withheld in its sole discretion). This Agreement may be signed in one or more counterparts, each of which shall be an original, but together shall be one and the same instrument. This Agreement may further be signed and transmitted by facsimile, pdf, or other electronic means, with such signature to be treated as an original and the document transmitted to be considered to have the same binding effect as an original signature on an original document.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first set forth above.

**GREYSTONE SERVICING COMPANY LLC**

By:________________________________
Name: Robert Russell
Title: Senior Managing Director

**CW FINANCIAL SERVICES LLC**

By:________________________________
Name: Alex Killick
Title: Senior Managing Director