# EXHIBIT 18

JacksonLewis

**Jackson Lewis P.C.**
11790 Sunrise Valley Drive
Suite 400
Reston, VA 20191
(703) 483-8300 Main
jacksonlewis.com

DIRECT DIAL: (703) 483-8305
E-MAIL: THOMAS.MURPHY@JACKSONLEWIS.COM

******CONFIDENTIAL******

May 27, 2026

**VIA FEDERAL EXPRESS**

Mr. David King
CONFI/PII [redacted]

**Re: CWCapital theft of business from and**
**illegal employee raiding targeting Greystone Servicing Company**

Dear Mr. King:

This firm represents Greystone Servicing Company LLC, and its affiliates ("Greystone" or the "Company"). Greystone is investigating your actions as its former employee, for possible collusion with other former Greystone employees, including Jason Price, Mary English, and Greg Frederking. We understand that CWCapital Asset Management ("CWCapital") now employs you and each of the above-named individuals, who have left the Company within the past few weeks or months to perform services for CWCapital in direct competition with Greystone.[1]

We write to remind you of your continuing contractual obligations to Greystone and to demand that you immediately cease and desist violating your legal obligations to the Company under your Employment Agreement (as defined below) with Greystone and under statutory and common law.

In connection with your employment with the Company, you entered into an Employment Agreement on or about August 2, 2021 (as may have been amended and/or supplemented, the "Employment Agreement"), by which you agreed to express non-solicitation obligations, including the following:

[1] We are further advised that there is information indicating that CWCapital has attempted to hire or is considering hiring additional Greystone employees who are, like you and those named, subject to agreements that govern certain post-employment activities.

> "**<u>Non-Solicitation</u>**. During the 'Restricted Period,' which is defined as the duration of your employment with Greystone (the 'Employment Period') plus the twelve (12) month period immediately following the Employment Period . . . you agree [that you] will not, directly or indirectly: (i) contact or communicate with any entities or individuals who were customers, clients, or investors of the Greystone Entities at any point during the Employment Period, and with whom you had material contact during that Employment Period (hereinafter 'Restricted Contacts'), for the purpose of soliciting or encouraging those Restricted Contacts (a) to transact business that competes with the Greystone Entities or (b) to reduce/refrain from doing any business with the Greystone Entities; (ii) interfere with or damage any business relationship of the Greystone Entities, including, without limitation, any such relationships with Restricted Contacts . . . (iii) solicit, encourage, or influence any individual who is an employee or independent contractor of the Greystone Entities during the twelve (12) months preceding the date of your termination to either (a) terminate his or her employment or independent contractor relationship with the Greystone Entities, (b) apply for or accept employment, work, or an independent contractor relationship with any person or entity other than the Greystone Entities, or (c) otherwise employ or retain any such individual."

In addition, your Employment Agreement requires you to keep confidential the Company's trade secrets and confidential and proprietary information ("Confidential Information") both during and after your employment with Greystone. As most applicable here, that protected Confidential Information includes due diligence materials, contract terms and other information related to the sale of substantially all of the assets of Greystone's special servicing business, to which, we are advised, you had access prior to resigning your employment in November, 2025.

We are further advised that you and the other identified former Greystone employees have engaged in actions which are in violation of your Employment Agreement, and applicable statutory and common law. While our investigation is ongoing, Greystone is aware of information that, in good faith, indicates violations of law by you in collaboration with some or all of these former Greystone employees in support of your service to CWCapital including the following:

- You recently communicated on your CWCapital email with a Greystone client who you serviced at Greystone that "***we just brought Greg over for the AM component and we are doing some diabolical stuff on that front***."

- You thereafter communicated via email to "Greg" (Mr. Frederking) on the latter's second day of employment after being solicited to join CWCapital that "***I've been thinking about prime.***"

- The next day following the above email, Greystone received notice that its client, Prime, was moving special servicing assignments for the securitizations controlled by Prime from Greystone to CWCapital.

- Upon information and belief, Mr. Frederking was targeted by CWCapital and these former Greystone employees to support their solicitation of Prime and at least one other Greystone client, 400 Capital, to induce Prime and 400 Capital to move their business away from Greystone.

- Greystone has now learned that 400 Capital intends to remove Greystone as special servicer from six securitizations, which 400 Capital controls, and to replace Greystone with CWCapital.

- Upon information and belief, you solicited or supported the solicitation of Mr. Price, a person you recruited to Greystone, to resign from Greystone and commence employment with CWCapital in or about December, 2025.

- Upon information and belief, after being solicited and induced to leave Greystone and join CWCapital, Mr. Price then solicited at least three (3) additional Greystone employees to leave Greystone for employment with CWCapital, including Ms. English, who resigned from Greystone in February, 2026.

- Upon information and belief, each of Ms. English and Mr. Price, have contacted at least one (1) other employee of Greystone for the purpose of soliciting and inducing that person to resign from Greystone for employment at CWCapital.

As our investigation continues, our client is confident that the forgoing pattern of illegal activity undertaken by you, Mr. Price, Mr. Frederking, and perhaps Ms. English, all in service to CWCapital, will establish that you have been in breach of your Employment and violating applicable law at least since joining CWCapital. Further, our ongoing investigation indicates that one or more of you and the other former Greystone employees now working for CWCapital, may have violated the Virginia Business Conspiracy Act (or caused CWCapital to violate it) as well as numerous common law duties and obligations, including misuse of the Confidential Information. As a direct result of your and the other former Greystone employees' illegal conduct, Greystone has been harmed and continues to be harmed.

In particular, Greystone is harmed due to your wrongful solicitation of business from Greystone clients inducing them to replace Greystone as special servicer with CWCapital, and resulting in a loss of revenue. Greystone is further harmed due to your wrongful solicitation of Greystone employees, which impacts the value of the special servicing assets that are currently under contract to be sold to a third party. Your prior access to the Confidential Information related to the pending sale including the terms of the confidential contract, the due diligence materials, portfolio details, client contract details and the details of each employee's compensation. Your actions and CWCapital's raiding of Greystone employees in breach of your employee non-solicitation agreement and duty of confidentiality will result in the loss of assets in Greystone's special servicing portfolio of more than $5.4 billion. These losses have a direct and inevitable impact on Greystone revenue from special servicing, the special servicing business's value and on

the pending asset sale transaction. Simply put, should the pending third party sale fail to close, your actions could constitute tortious interference.

The tortious conduct, breaches of contractual obligations, and misuse of Confidential Information must cease immediately. Specifically, Greystone hereby demands that you:

1. Immediately cease and desist from any further direct or indirect solicitation of, communication to, or contact with any Greystone employee for purposes of recruitment or employment with CWCapital or any other entity;

2. Immediately cease and desist from any further direct or indirect solicitation, communication, or contact with any Restricted Contact for any purpose;

3. Immediately cease and desist from using Greystone's Confidential Information;

4. Confirm in writing that you will comply fully with your contractual obligations; and

5. Provide written confirmation that you have not solicited any other Greystone employees or Restricted Contacts, and if you have, identify those individuals and the dates of such communications.

In addition, Greystone will consider pursuing against CWCapital and you, personally, any and all actions and recourse it may have, whether under your Employment Agreement, at law or in equity, for your tortious interference with a contract, breaches of your non-solicitation obligations and your breaches of the duty of confidentiality, which actions may include seeking damages for, among other things, the loss in value of the special servicing assets currently under contract to be sold caused by your wrongful acts.

This foregoing matter is a legal dispute. Please take notice that you have a duty under applicable law to preserve any and all documents and communications relating to these issues. If you have legal counsel, please have your counsel contact us by no later than May 29, 2026. Regardless, please provide the assurances demanded above on or before May 29, 2026.

Greystone reserves all rights and remedies available to it, whether under your Employment Agreement, at law, in equity or otherwise, including, but not limited to seeking injunctive relief, monetary damages, attorneys' fees, and any other appropriate relief should you fail to comply with

JacksonLewis



your contractual obligations. Nothing in this letter constitutes a waiver of any rights, claims, or causes of action Greystone may have, all of which are expressly reserved.

Very truly yours,

**JACKSON LEWIS, P.C.**

Thomas P. Murphy
Joseph E. Schuler

cc: Greg Lyss, Greyston
Nelson Phelps, CWCapital