# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| GREYSTONE SERVICING COMPANY LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:26-cv-02014 |
| CWCAPITAL ASSET MANAGEMENT LLC, DAVID KING, JASON PRICE, MARY ENGLISH, and GREG FREDERKING, | ) | |
| Defendants. | ) | |

**[PROPOSED] TEMPORARY RESTRAINING ORDER**

This matter comes before the Court on the Emergency Motion for a Temporary Restraining Order and a Preliminary Injunction ("Emergency Motion") filed by of Plaintiff Greyston Servicing Company, LLC. ("Greystone") against Defendant CW Capital Asset Management, LLC ("CW"), and Individual Defendants Jason Price, David King, Greg Frederking, and Marry English (collectively, "Defendants").

For the reasons set forth below, the Court hereby **GRANTS** Greystone's request for a Temporary Restraining Order issued and effective as of **[TIME]** on **[DATE]** and expiring fourteen (14) days after the issuance date at 11:59pm EDT.

The Court **ORDERS** that Defendants:

1. Tender, within twenty-four (24) hours of the date of this Order, to Greystone a list of all electronic devices, including cell phones, tablets, and storage devices, including personal

electronic devices, whether they are utilized at Defendant King's residence, at CW, or elsewhere, upon which Defendant King performed any work for CW;

2. Tender, within twenty-four (24) hours of the date of this Order, to Greystone a list of all Greystone's customers or clients ("Restricted Contacts") with whom Defendant King, or any individual acting on his behalf, has contacted or otherwise communicated with since November 2025, including the date, time, manner, and substance of those contacts;

3. Refrain from soliciting or inducing, or attempting to solicit or induce, directly or indirectly, any of Greystone's employees, to end or alter his or her relationship with Greystone;

4. Refrain from soliciting or inducing, or attempting to solicit or induce, directly or indirectly, any Restricted Contact to end or alter his, her, or its relationship with Greystone;

5. Refrain from accessing, using, disclosing, modifying or deleting Greystone's confidential, proprietary, and/or trade-secret information in their possession, custody, or control; and

6. Refrain, with respect to Defendant King, from working for or on behalf of any Restricted Contact with whom he had material contact during his employment with Greystone.

Based on the exhibits attached to Greystone's Memorandum in Support of the Emergency Motion and Verified Complaint, the Court finds that Greystone has satisfied the elements for a temporary restraining order and has proven that it will likely succeed on the merits, that it will likely suffer irreparable harm without an injunction, that the balance of equities tips in Greystone's favor, and that this injunction serves the public interest.

Greystone credibly asserts that it possesses trade secrets, including: (i) LoanSStar, Greystone's proprietary servicing system containing, among other things, loan and asset information, valuations, strategy recommendations, and resolution statuses; (ii) Surveillance App,

Greystone's proprietary application detailing the SSD's "watchlist" and proprietary data on performing loans; (iii) Base Case, Greystone's proprietary underwriting model; (iv) Greystone's bond valuation model and other models outside of Base Case; (v) policies and procedures that are proprietary to Greystone's business; and (vi) transaction and agency rating strategies. Greystone further asserts that its trade secrets have value derived from not being generally known or readily ascertainable, and that Greystone has taken reasonable measures to maintain the secrecy of its trade secrets. According to Greystone allegations, its trade secrets are implicated in interstate commerce.

Greystone credibly asserts that Defendants misappropriated its trade secrets by employing artifice and dishonesty to retain copies of its trade secrets after Defendant King terminated his employment with Greystone and began working at CW. Defendant King was charged with maintaining the confidential status of Greystone's proprietary information, trade secrets, and intellectual property under the Employee Manual with Greystone. Greystone asserts that, in the face of these obligations, King went to work for CW. Greystone credibly asserts that Defendant King used Greystone's trade secrets and confidential information during his employment with CW to solicit and entice Greystone's clients to end their relationship with Greystone in favor of CW. Greystone credibly asserts that CW conspired with Defendant King to utilize Greystone's trade secrets to solicit and divert Greystone's clients to CW.

Greystone also credibly asserts that Defendant King has breached the non-solicitation and confidentiality provisions of his Letter Agreement. Greystone asserts that these are valid, enforceable agreements between Greystone and Defendant King. Greystone credibly asserts that the Defendant King solicited Greystone employees to end their relationship with Greystone to work at CW. Greystone credibly asserts that Defendant King solicited Greystone's clients, with

whom he had material contacts during his employment with Greystone to end their relationship with Greystone in favor of CW. Greystone credibly asserts that CW conspired with Defendant King to tortiously and improperly interfere with Greystone's contractual and business relationships, including with Greystone's clients and employees.

Therefore, the Court finds it likely that Greystone will succeed on its claims for misappropriation of trade secrets, breach of contract, Virginia Business Conspiracy Act, and tortious interference.

Greystone credibly asserts that it is likely to suffer irreparable harm if its requested injunction against Defendants is not granted. Greystone claims that it is at risk of imminent and continued loss of its trade secrets via disclosure through Defendant King to CW. As this Court has acknowledged before, the "disclosure of trade secrets establishes immediate irreparable harm because 'a trade secret, once lost is, of course, lost forever.'" *See Home Funding Grp., LLC v. Myers*, 2006 WL 6847953, at *2 (E.D. Va. Dec. 14, 2006) (quoting *Acierno v. New Castle Co.*, 40 F.3d 645, 647 (3d Cir. 1994)). The same is true with respect to the disclosure of proprietary information that a contractual party has agreed to safeguard. *See Capital One Financial Corp. v. Sykes*, 2021 WL 2903241, at *14-15 (E.D. Va. July 9, 2021). Greystone asserts that the risk of harm is actual and imminent, not remote or speculative based on Defendant King's purported breach of his contractual obligations to Greystone. Moreover, as Greystone claims, several Greystone clients have diverted business to CW since the Individual Defendants began their employment with CW worth approximately 50% of Greystone's non-agency third-party portfolio, and the disclosure of its trade secrets and continued solicitation of its employees is likely to impact the value of the pending Proposed Transaction to sell its Special Servicing Division.

Therefore, the Court finds it likely that Greystone will suffer irreparable harm in the absence of a temporary restraining order.

With regard to the balance of equities, Greystone credibly asserts that it weighs in favor of granting the temporary restraining order because, as described above, Greystone stands to suffer imminent and irreparable harm in the absence of the requested relief, while Defendants will suffer, at most, limited inconvenience.

Therefore, the Court finds that the balance of equities weighs in favor of maintaining the status quo and granting the temporary restraining order.

Finally, Greystone credibly asserts that the issuance of this temporary restraining order is in the public interest because public policy favors the protection of trade secrets and enforcing contracts between parties.

Therefore, the Court finds that the public interest weighs in favor of granting the temporary restraining order.

For the reasons set forth above, the Court finds the evidence provided credible and sufficient to justify the issuance of this Temporary Restraining Order on an emergency basis and before Defendants are heard in opposition.

Counsel for Greystone shall **SERVE** a copy of this Temporary Restraining Order on Defendants' counsel by federal express (overnight) and electronic mail and may cause a copy to be served on whoever else Greystone deems appropriate.

Counsel for Greystone shall **CONTACT** chambers to obtain a hearing date on its request for a preliminary injunction.

GREYSTONE shall **POST BOND** in the amount of Two Thousand Five Hundred Dollars ($2,500.00), by cash or check made payable to “Clerk, US District Court,” and such funds shall be deposited into the Registry of the Court.

This Court retains jurisdiction to compel compliance with the terms of this Temporary Restraining Order.

**IT IS SO ORDERED**

ENTERED THIS ____ DAY OF __________________, 2026

________________________________
United States District Judge