**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

**GREYSTONE SERVICING COMPANY LLC,**

***Plaintiff,***

***v.***

**CWCAPITAL ASSET MANAGEMENT LLC, et al.,**

***Defendants.***

**Case No.: 1:26-cv-02014**

**DECLARATION OF GREG FREDERKING**

I, Greg Frederking, hereby declare as follows:

1. I am over 18 years of age.

2. I am the Managing Director at CWCapital Asset Management LLC ("CW").

3. I have personal knowledge of the facts set forth in this declaration and I am competent to testify to them.

4. In or around 2003, I joined what is now Greystone Servicing Company LLC ("Greystone") and worked there for over 20 years.

5. I was employed at Greystone when it was called "C-III" and under the ownership of Island Capital.

6. In or around 2025, I worked as a Managing Director in Greystone's Special Servicing Division ("SSD").

7. Mary English was one of the employees I managed in the SSD.

8. Starting in 2024, Greystone was seeking to sell the SSD to prospective businesses.

9. Strategic Value Partners ("SVP") was among the businesses interested in purchasing the SSD.

10. Island Capital was among the businesses interested in purchasing the SSD.

11. Having worked at C-III (under Island Capital), I was not interested in the prospect of the SSD being once again under the ownership of Island Capital.

12. In or around 2025, many personnel and key employees in the SSD left Greystone for other opportunities, including early retirements and departures to direct competitors of Greystone that did not include CW.

13. Many of these employees told me why they were leaving Greystone—and none of the reasons provided were CW, Jason Price, David King, or Mary English.

14. And on April 2, 2026, Greystone terminated three employees in the SSD Investor Reporting Department.

15. Throughout 2025 and into 2026, the work environment at Greystone rapidly declined. The potential sale caused employee anxiety over job security and concerns over new management. This occurred against a backdrop of employees leaving the SSD (not to CW but elsewhere). Once these employees left, their work was allocated to the remaining employees—giving them more work. To my knowledge, no pay increases were provided to these employees to account for the additional workload.

16. I am aware of at least two asset managers and one Real Estate Owned ("REO") sales manager who departed Greystone in 2025 and still had not been replaced by the time I left Greystone in May 2026.

17. Other SSD employees (including myself) also experienced increased workloads due to the drawn-out SSD sale process, which required regular and ongoing communications with

prospective buyers to supply them with relevant data and information flowing from the due diligence process.

18. By 2026, I was ready to leave Greystone. This decision had nothing to do with David King, Mary English, or Jason Price.

19. In or around February 2026, Alex Killick at CW called me—I had no prior communications with David King, Mary English, or Jason Price about me working at CW.

20. I knew Alex generally based on industry connections but did not have a prior personal relationship with him.

21. Shortly after speaking with Alex, I spoke with my supervisor at Greystone, Jenna Unell. I let Jenna know I was considering moving to CW.

22. During this time, Greystone did nothing to keep me, despite knowing that I was interviewing with CW and that CW would pay more for my services. After working for Greystone for over 20 years, this did not sit well with me.

23. CW offered me a position in May 2026, which I accepted.

24. I provided my two weeks' notice to Greystone.

25. Greystone waited until that point to match the offer I received from CW.

26. By that time, I had already decided to leave. I had been at Greystone and its predecessors for over twenty (20) years, but I didn't like the way they were running their business, I had no interest in working for Island Capital again, and I was ready for a change. If I had not moved to CW, I still would have left Greystone—I had no interest in continuing with Greystone or Island Capital to the extent the purchase was completed.

27. There were many factors involved in my decision to leave Greystone—none of them had anything to do with David King, Jason Price, or Mary English.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: July 20, 2026, at Irving, TX

Greg Frederking
Managing Director
CWCapital Asset Management LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2026, a copy of the foregoing was served, via the Court's electronic filing system on:

Jon M. Talotta (VSB No. 44590)
Samuel W. Yergin (VSB No. 93862)
HOGAN LOVELLS CADWALADER US LLP
8350 Broad Street, 17th Floor
Tysons, VA 22102
Tel: 703-610-6100
Fax: 703-610-6200
jon.talotta@hlc.com
samuel.yergin@hlc.com

Michael E. DeLarco (*pro hac vice*)
HOGAN LOVELLS CADWALADER US LLP
390 Madison Ave.
New York, NY 10017
Tel: 212-918-3000
Fax: 212-918-3100
michael.delarco@hlc.com

Andrew T. Simmons (*pro hac vice*)
HOGAN LOVELLS CADWALADER US LLP
1735 Market St., Twenty-third Floor
Philadelphia, PA 19103
Tel: 267-675-4600
Fax: 267-675-4601
andrew.simmons@hlc.com

*Counsel for Plaintiff*

*/s/ Nicholas M. DePalma*
Nicholas M. DePalma (VSB No. 72886)
Taylor S. Chapman (VSB No. 81968)
Christian R. Schreiber (VSB No. 89544)
VENABLE LLP
1850 Towers Crescent Plaza, Suite 400
Tysons Corner, VA 22182
(703) 760-1600 (phone)
(703) 821-8949 (fax)
nmdepalma@venable.com
tschapman@venable.com
crschreiber@venable.com

*Counsel for Defendants*